IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FARRELL BEDSOLE, #242016,      )
                               )
          Plaintiff,           )
                               )
     v.                        )          CASE NO. 2:11-CV-121-WKW
                               )                    [WO]
                               )
NURSE GUICE, et al.,           )
                               )
          Defendants.          )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION

This 42 U.S.C. § 1983 action is before the court on claims presented by Farrell Bedsole

["Bedsole"], an indigent state inmate, challenging the medical treatment provided to him for

chronic back pain during his incarceration at the Staton Correctional Facility ["Staton"].

*Complaint - Doc. No. 1* at 2-3; *Affidavit in Support of Complaint - Doc. No. 1-2* at 1-3.  Bedsole

names Domineek Guice, a certified registered nurse practitioner; Dr. DyJerlynn Lampley;

Michelle Sagers-Copeland, a registered nurse; and Wilma Flowers and Mary Barrett, licensed

practical nurses (all employees of the prison system's contract medical care provider), as

defendants in this cause of action. He also names Dr. William Sanders, a staff psychiatrist for

Mental Health Management, Inc., the contract mental health care provider, as a defendant.

Bedsole seeks monetary damages for the alleged violations of his constitutional rights.

*Complaint - Doc. No. 1* at 4.

The defendants filed special reports and relevant supporting evidentiary materials,

including affidavits and medical records, addressing Bedsole's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to construe the aforementioned reports as motions for summary judgment.  *Order of May 11, 2011 - Doc. No. 40*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -]

---

[1] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*. "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison [medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for

summary judgment, Bedsole is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted

4

in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11ᵗʰ Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74ᵗʰ Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11ᵗʰ Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11ᵗʰ Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11ᵗʰ Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary

judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Bedsole fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Suit Against the Defendants in Their Official Capacities - Absolute Immunity

To the extent that Bedsole sues the defendants in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see*

*Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Dr. William Sanders - Staff Psychiatrist

Although Bedsole lists Dr. Sanders as a defendant, he presents no claims regarding mental health treatment.  It is undisputed that Dr. Sanders is a staff psychiatrist employed by the mental health care provider "under contract with the Alabama Department of Corrections to provide mental health services and treatment to inmates."  *Exhibit A to the Special Report of Defendant Sanders (Affidavit of Dr. William Sanders) - Doc. No. 39-1* at 1-2.  Moreover, the record establishes, and Bedsole does not dispute, that Dr. Sanders "at no time ... ever provided medical care or treatment ... to inmates."  *Id*.  Consequently, summary judgment is due to granted in favor of Dr. Sanders.

### C.  Deliberate Indifference by Medical Personnel

Bedsole complains that upon his transfer to Staton in March of 2010 the medical

defendants failed to provide him adequate medical treatment for his chronic back pain, which resulted from an injury suffered during his military service in 1974.  Specifically, Bedsole asserts that the medical defendants failed  promptly to provide him medication for his pain and refused to renew his medical profiles for a back brace, extra mattress, walking cane and no prolonged standing.  Bedsole further complains that upon receipt of an initial prescription for Motrin issued at Staton he was required to attend pill call to receive the medication and the time spent in line negated the affect of the medication.  Bedsole also complains that when he received his next prescription for Motrin, a prescription tagged "KOP" (Keep On Person), the pill call nurse could only provide him with a 10-day supply of the prescription; this occurred on only two occasions, resulting in his receiving merely one-third of this prescription.

The defendants adamantly deny they acted with deliberate indifference to Bedsole's medical needs and, instead, maintain that Bedsole received appropriate treatment in response to his complaints of back pain.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal

8

quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge

of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a

delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the
> basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,*
> 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,*
> 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something more must be shown.
> Evidence must support a conclusion that a prison physician's harmful acts were
> intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct.
> 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491
> (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly
> disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543
> (stating that plaintiff must show more than mere negligence to assert an Eighth
> Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d
> 1176, 1191 n. 28 (11th Cir.1994) (recognizing that Supreme Court has defined
> "deliberate indifference" as requiring more than mere negligence and has adopted
> a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d
> 949, 955 (7th Cir.1999) (stating "deliberate indifference" is synonym for
> intentional or reckless conduct, and that "reckless" conduct describes conduct so
> dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need ..., Plaintiff[]

must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need;

and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*,

588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate

indifference, an inmate is required to establish "an objectively serious need, an objectively

insufficient response to that need, subjective awareness of facts signaling the need and an actual

inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d

at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to

the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'  *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291; *Mandel*, 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'  *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely

accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

In addition to the above described elements, when an inmate's deliberate indifference claim arises from an alleged delay in treatment, a court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d  1312, 1327 (11th Cir. 2007); *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187-1188 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9, 122 S.Ct. 2508, 2515 n.9 (2002) (To succeed on an allegation that delay in medical treatment shows deliberate indifference, the

11

plaintiff "must place verifying medical evidence in the record to establish the detrimental effect [that the] delay in medical treatment [had on his medical condition].").

The affidavit filed by Nurse Guice addresses the allegations made by Bedsole. A thorough review of the evidentiary materials filed in this case demonstrates that this affidavit is corroborated by the objective medical records compiled contemporaneously with the treatment provided to Bedsole regarding the instant claim of deliberate indifference. Nurse Guice provides the following explanation of the treatment afforded Bedsole.

> ... Bedsole was transferred by the Alabama Department of Corrections to the Staton Correctional Facility from the Bibb Correctional Facility on March 1, 2010. I have reviewed Mr. Bedsole's medical file and I am aware of the medical care and treatment that Mr. Bedsole has received during his incarceration at the Staton Correctional Facility. I have personally provided hands-on medical services to Mr. Bedsole during his incarceration at Staton. I therefore, have first-hand knowledge of the medical treatment received by Mr. Bedsole at the Staton Correctional Facility.
>
> I am aware of the claims being made by Mr. Bedsole and the allegations that he has received inadequate medical treatment relating to his back pain and back condition....
>
> * * *
>
> Since arriving at the Staton Correctional Facility from the Bibb Correctional Facility, I have seen Mr. Bedsole on numerous occasions. Mr. Bedsole is seen frequently at the Healthcare Unit. Mr. Bedsole has continued to complain of back pain and has requested [a] bottom bunk profile, a walking cane and a back brace.
>
> I have personally ordered a bottom bunk profile for Mr. Bedsole. However, this was made more so for other medical conditions than his back pain. I have not provided Mr. Bedsole with either a walking cane or back brace [or other medical profile] because they are not medically necessary at this time. I have personally witnessed Mr. Bedsole ambulate to and from the Healthcare Unit without any problems or pain. Mr. Bedsole does not have a job at the Staton Correctional Facilty or a position that would require a walking cane or back brace [or no standing profile]. [My observations and evaluations indicate that] Mr. Bedsole ambulates without any problems or difficulties.
>
> During his incarceration at the Staton Correctional Facility, Mr. Bedsole

has been provided with aspirin and Ibuprofen [a brand name of which is Motrin. Each of these medications is commonly utilized in pain management.] He is now being prescribed Motrin for his back pain.

Mr. Bedsole is seen regularly by myself and the other nurses at the Healthcare Unit at the Staton Correctional Facility. Nobody has ever refused to see or treat Mr. Bedsole.

Each time Mr. Bedsole has requested medical care and/or attention, he has been seen and treated by the medical staff at the Staton Correctional Facility.

*Exhibit 1 to the Special Report of the Medical Defendants (Affidavit of Domineek Guice) - Doc.*

*No. 21-1* at 20-23.

The court has likewise undertaken a thorough and exhaustive review of the corresponding medical records submitted by the defendants and referenced by Bedsole in his responsive pleading. These records indicate the following actions occurred in the treatment of Bedsole's complaints of back pain upon his transfer to Staton.[2]

1. March 3, 2010 - Routine evaluation of Bedsole upon transfer to Staton. *Doc. No. 21-1* at 118. Recommendation for placement on lower bunk by attending nurse. *Id*. at 61.

2. March 8, 2010 - Bedsole is examined in health care unit regarding sick call requests seeking renewal of medications and an injury to his left wrist which occurred prior to his transfer to Staton. *Doc. No. 21-1* at 91. Nurse Guice evaluated Bedsole and prescribed 600mg Motrin for pain. *Id*. She also issued orders for an X-ray of Bedsole's left wrist and continuation of all chronic care medications. *Id*.

3. March 12, 2010 - Follow-up by medical personnel to check profile needs. *Doc. No. 21-1* at 77.

4. April 1, 2010 - Bedsole is examined by Nurse Guice regarding complaints of chronic back pain. Nurse Guice notes that Bedsole "ambulates w/ strong, steady gait." *Doc. No. 21-1* at 89. Examination also revealed no atrophy, good pulses,

---

[2]All citations are references to Bedsole's medical records which appear as Exhibit A to the Special Report filed by the medical defendants.

natural color, strength strong and equal.  *Id*.  Medical records requested for provider to review in determining treatment plan.

5.  April 14, 2010 - Aspirin 325mg prescribed for 90 days KOP.  *Doc. No. 21-1* at 75.

6.   April 23, 2010 - Staton health care personnel make second request for production of Bedsole's complete medical records.  *Doc. No. 21-1 at 75*

7.  April 28, 2010 - Bottom bunk profile issued for 365 days and prescription provided for Motrin 600mg three times a day for 30 days.  *Doc. No. 21-1 at 75*.

8.  July 14, 2010 - Prescription for Aspirin renewed for 90 days KOP. *Doc. No. 21-1 at 74*.

9.  October 5, 2010 - Aspirin prescription renewed for 120 days.  *Doc. No. 21-1* at 72.

10.   November 17, 2010 - Evaluation of chronic back pain by Nurse Guice. Bedsole's requests for no prolonged standing profile and walking cane denied because he "has no job duties and reports no weakness to extremities." *Doc. No. 21-1 at 86*.  In addition, Nurse Guice observed no atrophy or deformity.  *Id*. She also  noted that Bedsole's chronic back pain is stable, advised Bedsole to perform lower back strengthening exercises and issued a prescription for 600mg Motrin three times per day for 30 days KOP.  *Id*. at 84.  Bedsole was informed of the treatment plan and advised to follow-up with medical personnel in four weeks for additional evaluation.  *Id*.

11.   January 3, 2011 - Follow-up appointment for complaints of back pain. Aspirin 325mg prescribed for 120 days KOP.  Motrin 600mg prescribed twice daily for 90 days KOP. *Doc. No. 21-1 at 71*.

12.   February 9, 2011 - Nurse Guice performed a follow-up examination of Bedsole regarding his complaint of chronic back pain.  She noted that Bedsole wanted his prescription for Motrin increased to 800mg three times a day due to an increase in pain "with weather changes." *Doc. No 21-1 at 83*.  Nurse Guice issued an order to discontinue the prescription for Motrin 600mg, provided a prescription for Motrin 800mg twice daily for 90 days KOP, and advised Bedsole of the pain management goal and informed him of the complications associated with chronic daily use of non-steroidal anti-inflammatory drugs such as Motrin, i.e., kidney damage and gastrointestinal bleeding.  *Id*.  Bedsole acknowledged his awareness of these complications and stated he would continue to take the

14

medication to alleviate his pain. *Id*.

It is clear from the evidentiary materials submitted by the defendants that medical personnel performed routine physical examinations of Bedsole regarding his complaints of back pain. An x-ray performed of Bedsole's lumbar spine in Ocrober of 2009 indicated that the alignment of his spine "is satisfactory with DJD [degenerative joint disease] and disc space narrowing at L4-5 noted." *Exhibit A to the Special Report of the Medical Defendants - Doc. No. 21-1* at 195. Based on review of his medical records, numerous physical examinations, the recent radiological findings, and the fact that Bedsole's complaints of back pain were constant and unvaried, medical personnel determined that pain management constituted the proper course of treatment. From the time of his arrival at Staton and continuing throughout his confinement in this facility, Bedsole received medications commonly used for pain relief, including aspirin and ibuprofen, in an effort to alleviate his pain. He was also issued a medical profile for a bottom bunk effective for one year, prescribed heat therapy, informed of routine exercises which would help to strengthen his back and advised to perform these exercises. Health care professionals deemed issuance of additional medical profiles unnecessary. The evidence before the court likewise establishes that Bedsole's condition remained stable throughout the relevant period of time.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by the medical defendants in addressing Bedsole's complaints of back pain did not violate his constitutional rights. The medical care Bedsole received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the

15

fundamental fairness." *Harris*, 941 F.2d at 1505. The allegations presented by Bedsole simply fail to establish deliberate indifference by the medical defendants. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation). As is the issue here, whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability. *Adams*, 61 F.3d at 1545-1546. In addition, an inmate's allegation that prison medical personnel did not diligently pursue alternative means of treating his condition "did not 'rise beyond negligence'... to the level of deliberate indifference." *Id*.; *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Bedsole received medical treatment for his back pain and that medical personnel rendered this treatment to Bedsole in accordance with their professional judgment. In addition, Bedsole has failed to present any evidence which indicates that the defendants knew that the manner in which they provided treatment for his back pain created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Bedsole' medical needs. Consequently, the court concludes that summary judgment is due to be granted in favor of the medical defendants on the claims presented by Bedsole. *Carter*, 352 F.3d at 1350; *Holifield*, 115 F.3d at 1564 n.6; *Harris*,

16

65 F.3d at 916.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  Each party bear the burden of their own costs.

It is further

ORDERED that on or before February 27, 2014, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding

precedent all decisions of the former Fifth Circuit handed down prior to the close of business on

September 30, 1981.

DONE, this 13th day of February, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE